IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


JESUS MEGA, JR.,                    :
          Plaintiff                 :
                                    :
     v.                             :        CIVIL NO. 3:CV-16-1404
                                    :
                                    :        (Judge Conaboy)
BUREAU OF PRISONS, ET AL.,          :
          Defendants                :
_____

**MEMORANDUM**
**Background**

Jesus Mega, Jr., an inmate presently confined at the Allenwood United States Penitentiary, White Deer, Pennsylvania (USP-Allenwood), filed this pro se civil rights action.  Plaintiff has also submitted an in forma pauperis application.  See Doc. 2.  For the reasons set forth below, Mega's action will be dismissed, without prejudice, as legally frivolous pursuant to the screening provisions of 28 U.S.C. § 1915.

Named as Defendants are the Federal Bureau of Prisons (BOP) and the following USP-Allenwood officials: Warden Oddo; Captain Feldman; and SIS Agent Heath  Plaintiff describes himself as being an active member "in good standing" of Mexikanemi, a prison gang.[1] Doc. 1, ¶ IV.  According to the Complaint Mega was placed in the USP-Allenwood Special Housing Unit (SHU) on December 4, 2015 pursuant to a joint decision by the Defendants.

_____

[1]  Mexikanemi is a notorious Hispanic prison gang sometimes referred to as the Texas Mexican Mafia.

Plaintiff contends that while in the SHU he has limited access to medical, psychological, and rehabilitative programs.  He contends that there is no valid reason for his SHU placements and he is being targeted due to his race and initiation of complaints against prison staff. Mega adds that as a result of being in the SHU he has suffered anxiety and depression which is not being properly treated. The Complaint also includes an allegation that Defendants have failed to timely respond to his requests under the Freedom of Information Act (FOIA).  As relief, Mega requests to be housed in general population with other Mexikanemi prisoners and monetary damages.

## **Discussion**

28 U.S.C. § 1915 imposes obligations on prisoners who file civil actions in federal court and wish to proceed in forma pauperis under 28 U.S.C. § 1915, e.g., that the full filing fee ultimately must be paid (at least in a non-habeas suit)  § 1915(e)(2)provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

When considering a complaint accompanied by a motion to proceed in forma pauperis, a district court may rule that process should not be issued if the complaint is malicious, presents an

2

indisputably meritless legal theory, or is predicated on clearly baseless factual contentions.  Neitzke v. Williams, 490 U.S. 319, 327-28 (1989); Wilson v. Rackmill, 878 F.2d 772, 774 (3d Cir. 1989).  Indisputably meritless legal theories are those "in which either it is readily apparent that the plaintiff's complaint lacks an arguable basis in law or that the defendants are clearly entitled to immunity from suit ... ."  Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990) (quoting Sultenfuss v. Snow, 894 F.2d 1277, 1278 (11th Cir. 1990)).

The United States Court of Appeals for the Third Circuit has added that "the plain meaning of 'frivolous' authorizes the dismissal of in forma pauperis claims that . . . are of little or no weight, value, or importance, not worthy of serious consideration, or trivial."  Deutsch v. United States, 67 F.3d 1080, 1083 (3d Cir. 1995).  It also has been determined that "the frivolousness determination is a discretionary one," and trial courts "are in the best position" to determine when an indigent litigant's complaint is appropriate for summary dismissal.  Denton, 504 U.S. at 33.

**Emotional Injury**

Plaintiff indicates that he is in part requesting an award of monetary damages for mental distress.  See Doc. 1, ¶ V.  42 U.S.C. § 1997e(e) provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody

without a prior showing of physical injury."  In <u>Allah v. Al-Hafeez</u>, 226 F.3d 247, 250 (3d Cir. 2000), the United States Court of Appeals for the Third Circuit recognized that where a plaintiff fails to allege actual injury, Section 1997e(e) bars recovery of compensatory damages.  However, the Court of Appeals added that an inmate alleging a violation of his or her constitutional rights may still pursue the action to recover nominal and/or punitive damages even in the absence of compensable harm.

Under the standards announced in <u>Allah</u> and Section 1997e(e), since there has been no showing that Plaintiff suffered any physical injury, Mega's civil rights claims which assert violation of his constitutional rights and seek in part an award of monetary damages can proceed only to the extent that they seek non-compensatory damages.  See <u>Ostrander v. Horn</u>, 145 F. Supp. 2d 614, 618 (M.D. Pa.  2001).

**<u>BOP</u>**

It is well settled that governmental entities are not persons and therefore not proper defendants in a federal civil rights action.  <u>Hindes v. F.D.I.C.</u>, 137 F.3d 148, 159 (3d Cir. 1998)(a federal agency is not a "person" subject to civil rights liability).  See <u>also</u> <u>Accardi v. United States</u>, 435 F. 2d 1239, 1241 (3d Cir. 1970); <u>Figueroa-Garay v. Muncipality of Rio Grande</u>, 364 F. Supp.2d 117, 128 (D. P. R.  2005).  Similarly, in <u>Shannon v. U.S. Parole Commission</u>, 1998 WL 557584 *3 (S.D.N.Y. Sept. 2, 1998), the district court recognized that civil rights claims may not be

4

maintained against federal agencies.  <u>See</u> <u>also</u> <u>Duarte v. Bureau of</u> <u>Prisons</u>, 1995 WL 708427 *2 (D. Kan. Nov. 3, 1995)(the BOP "is not a proper defendant in a <u>Bivens</u> action.").

Based on an application of the above standards, the BOP is not a properly named Defendant and therefore entitled to entry of dismissal.[2]

**FOIA**

Plaintiff vaguely contends that there has been no timely responses to his FOIA requests.  The FOIA provides administrative remedies, including an appeals process by which individuals can request information from federal agencies.  If a person fails to exhaust his available administrative remedies prior to filing a FOIA suit in federal district court, jurisdiction over his action may be declined.  <u>See</u> <u>McConnell v. United States</u>, 4 F.3d 1227, 1240-41 (3d Cir. 1993); <u>Thomas v. Internal Revenue Service</u>, No. 3:03CV2080, 2004 WL 3185316 *3 (M.D. Pa. Nov. 2, 2004).

Exhaustion of administrative remedies is generally required to allow the appropriate federal agency the initial opportunity to exercise its discretion and expertise and to make a factual record regarding its determination with respect to the FOIA request.  <u>See</u> <u>Id</u>.; <u>Oglesby v. Department of the Army</u>, 920 F. 2d 57, 64 (D.C. Cir.

---

[2]  It is also well recognized that a prison or correctional facility is not a person for purposes of civil rights liability. <u>See</u> <u>Fischer v. Cahill</u>, 474 F.2d 991, 992 (3d Cir. 1973); <u>Philogene v. Adams County Prison</u>, Civ. No. 97-0043, slip op. at p. 4 (M.D. Pa. Jan. 30, 1997) (Rambo, C.J.); <u>Sponsler v. Berks County Prison</u>, Civ. A. 95-1136, 1995 WL 92370, at *1 (E.D. Pa. Feb. 28, 1995).

1990).

According to the sparsely worded Complaint, Plaintiff brought this action before exhausting administrative remedies under FOIA. Accordingly, the FOIA claim will be dismissed. See <u>Hardy v. Daniels</u>, No. CV05-955, 2006 WL 176531 *1 (D. Or. Jan. 23, 2006) ("[w]here a plaintiff has failed to exhaust within the administrative system, the district court will dismiss the case for lack of jurisdiction").[3]

Alternatively, the Complaint does not set forth the nature of the FOIA request, indicate to whom it was addressed, or state when it was submitted.  As such, the Defendants have not been afforded adequate notice regarding the FOIA portion of the Complaint and as such a viable FOIA claim has not been properly pled.

**Respondeat Superior**

With respect to the remaining individual Defendants, a plaintiff, in order to state an actionable civil rights claim, must plead two essential elements:  (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 638 (3d Cir. 1995); <u>Shaw by Strain v. Strackhouse</u>, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

---

[3]  If Plaintiff did exhaust his FOIA administrative remedies, he may seek reconsideration of this determination within fourteen (14) days of the date of this Memorandum.

Civil rights claims brought cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. *See* Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Inmates also do not have a constitutional right to a prison grievance system. See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.") Consequently, any attempt by Plaintiff to establish liability against the Warden solely based upon the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because

prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

A review of the Complaint establishes that there are no allegations of constitutional misconduct specifically attributed to any of the three individually named Defendants.  On the contrary, other than naming them as Defendants, the Complaint only vaguely asserts that Warden Oddo, Captain Feldman, and SIS Agent Heath were jointly responsible for his SHU placement.

Based on the general nature of Mega's allegations, it appears that he may be attempting to establish liability against the Defendants solely based upon their respective supervisory roles or their failure to timely respond to his administrative complaints.[4] Under the standards developed in <u>Rizzo</u> and <u>Rode</u>, Plaintiff's Complaint to the extent that it is seeks to raise claims  based upon either the individual Defendants' respective supervisory capacities or any alleged lack of response to Plaintiff's institutional requests is insufficient for purposes of establishing civil rights liability.

**Conditions of Confinement**

With respect to Plaintiff's allegations regard the conditions of his SHU placement in USP-Allenwood, Plaintiff generally alleges only that his constitutional rights are being violated because he

---

[4] It is noted that there is no discernible claim that any of the three individual Defendants were responsible for Plaintiff's alleged failure to receive timely FOIA responses.

has limited access to medical, psychological and rehabilitative programs.  See Doc. 1, ¶ IV.  He also contends that his SHU placement was not warranted.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  This Amendment must be interpreted in accordance with "the evolving standards of decency that mark the progress of a maturing society."  Trop v. Dulles, 356 U.S. 86, 101 (1958).  However, a judge, when confronted with an Eighth Amendment claim, may not impose upon a prison his or her "notions of enlightened policy."  Hassine v. Jeffes, 846 F.2d 169, 175 (3d Cir. 1988).

In order to implicate the Eighth Amendment, a condition of confinement must be so reprehensible as to be deemed inhumane under contemporary standards or one that deprives an inmate of minimal civilized measure of the necessities of life.  See Hudson v. McMillian, 503 U.S. 1, 8 (1992); Wilson v. Seiter, 501 U.S. 294, 298 (1991).  An Eighth Amendment claim against a prison official must meet two requirements:  (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind."[5]  Farmer v.

---

[5]  Under Farmer, deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety.  See Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001).  This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the
(continued...)

Brennan, 511 U.S. 825, 834 (1994).  In prison conditions cases,
"that state of mind is one of 'deliberate indifference' to inmate
health or safety."  Id.

In Sandin v. Conner, 515 U.S. 472 (1995), the United States
Supreme Court held that while under certain circumstances, states
may create liberty interests protected by the Due Process Clause,

> these interests will be generally limited to freedom from
> restraint which, while not exceeding the sentence in such
> an unexpected manner as to give rise to protection by the
> Due Process Clause of its own force . . ., nonetheless
> imposes atypical and significant hardship on the inmate
> in relation to the ordinary incidents of prison life.

Id. at 484 (citations omitted).  The Court of Appeals for the Third
Circuit in Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997),
addressed an action initiated by a Pennsylvania state inmate who
had been held in administrative custody for a prolonged period.
The Court applied Sandin and concluded that placement without any
type of due process hearing for a period of fifteen (15) months was
not an atypical and significant hardship.  Furthermore, the
inmate's "commitment to and confinement in administrative custody
did not deprive him of a liberty interest and that he was not
entitled to procedural due process protection."  Id. at 708.  It
added that prolonged confinement in administrative custody,
including being required to eat meals in their cell, was not cruel
and unusual punishment.  Id. at 709.  Finally, an inmate placed in
administrative custody pursuant to a legitimate penological reason
could "be required to remain there as long as that need continues."

---

[5](...continued)
inference."  Farmer, 511 U.S. at 837.

Id.

Given Plaintiff's acknowledgment that he is an active member of an inmate gang and that prison officials felt that his safety was at risk there was a legitimate basis for his SHU placement. Second, based upon an application of the above standards there is no allegation that the duration of Mega's SHU placement of approximately seven months was of such magnitude or duration as to constitute the atypical and significant hardship contemplated under Hudson, Sandin, and Farmer. Moreover, the associated restrictions of his SHU custody cited by Mega did not deprive him of any of the necessities of life and as such do not rise to the level of a viable constitutional claim.[6]

## Deliberate Indifference

Prison officials are required under the Eighth Amendment to provide basic medical treatment to prisoners. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). The proper analysis for evaluating a deliberate indifference claim is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994).

An inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need to set forth a viable Eighth Amendment medical

---

[6] If Plaintiff can allege facts which could establish that he is being subjected to unconstitutional conditions of his confinement of such magnitude as contemplated by the standards set forth herein, he may file a motion for reconsideration within fourteen (14) days of the date of this Order.

claim.  See Spruill v. Gillis, 372 F.3d at 235-36; Natale v. Camden

Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

Courts reviewing such claims must determine if the defendant was:

(1) deliberately indifferent (the subjective component) to (2) the

plaintiff's serious medical needs (the objective component).

Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d

Cir. 1987).

     The Court of Appeals for the Third Circuit in Durmer v.

O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) stated that a non-

physician defendant cannot be considered deliberately indifferent

for failing to respond to an inmate's medical complaints when he is

already receiving treatment by the prison's medical staff.

However, where a failure or delay in providing prescribed treatment

is deliberate and motivated by non-medical factors, a

constitutional claim may be presented.  See Durmer, 991 F.2d at 69;

Lee v. Cerullo, 287 Fed. Appx. 145, 148 (3d Cir. 2008)(a Court of

Appeals decision involving this same Defendant, which concluded

that a non-physician prison medical administrator such as Cerullo

cannot be considered deliberately indifferent for an alleged

failure to directly respond to inmate's medical complaints when the

prisoner was already being treated by a doctor).

     In the present case, Plaintiff's complaint does not allege

that he suffers from a serious medical need.  Moreover, there is no

allegation that Mega had any specific medical condition or injury

whatsoever.  There is also no assertion that any of the named

Defendants are medical professionals or that as non-medical

professionals they failed to provide Plaintiff with any prescribed

treatment for non-medical reasons.  Based upon those circumstances, a viable claim of deliberate indifference to Mega's medical needs has not been stated.

**Equal Protection**

Plaintiff generally indicates that he was treated differently from general population prisoners.  A litigant seeking to establish a viable equal protection claim must show an intentional or purposeful discrimination. Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985), cert. denied, 475 U.S. 1096 (1986).  However, the Equal Protection Clause "does not deny to States the power to treat different classes of persons in different ways." Reed v. Reed, 404 U.S. 71, 75 (1971).  The Court of Appeals for the Third Circuit has observed that the Equal Protection Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Artway v. Attorney Gen., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985)); see also Kuhar v. Greensburg-Salem Sch. Dist., 616 F.2d 676, 677 n.1 (3d Cir. 1980) ("An equal protection claim arises when an individual contends that he or she is receiving different treatment from that received by other individuals similarly situated.").

Based upon a review of the Complaint there is no assertion by Mega that he is being treated differently from other SHU prisoners; there are no facts asserted that could support a claim that the Defendants engaged in intentional or purposeful discrimination or that they treated Plaintiff differently from similarly situated

individuals on the basis of his race, religious beliefs, or some other impermissible reason.  There are simply no factual averments alleged which could support a claim that the Defendants engaged in actions which intentionally discriminated against the prisoner. Based on the standards announced in <u>Wilson</u> and <u>Artway</u>, a viable equal protection claim is not set forth in the Complaint.

**<u>Conclusion</u>**

Since Plaintiff's complaint is "based on an indisputably meritless legal theory" it will be dismissed, without prejudice, as legally frivolous.  <u>Wilson</u>, 878 F.2d at 774.  An appropriate Order will enter.


                              S/Richard P. Conaboy
                              RICHARD P. CONABOY
                              United States District Judge


DATED: JULY 15, 2016